UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OSVALDO JAVIER TORRES,

        Petitioner,

v.                                           Case No.  8:07-cv-1383-T-24TGW

SECRETARY, DEPARTMENT OF CORRECTIONS,

        Respondent.

_____

## ORDER

      Osvaldo Javier Torres, through retained counsel, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition attacks Torres' convictions for first degree murder, armed burglary, and armed robbery arising from the Thirteenth Judicial Circuit, Hillsborough County, Florida, in state circuit case number 97-CF-1329.  A review of the record demonstrates that, for the following reasons, the petition must be denied.

### PROCEDURAL HISTORY

      On February 12, 1997, Torres was indicted by the Grand Jury of Hillsborough County, Florida, along with co-defendants William Tracy Hinson, Richard Margarejo,

and Luis Davila-Zuntiga (Davila), for the offenses of first degree murder (Count One), armed burglary of a dwelling with an assault or battery while carrying a firearm (Count Two), and armed robbery with a firearm (Count Three). (Exhibit 1). Torres, who was tried separately from his co-defendants, proceeded to jury trial on October 20-21, 1997.[1]  The jury returned a verdict of guilty as charged on all counts. (Exhibit 2). On October 21, 1997, the state trial court sentenced Torres to life imprisonment on Count One, and 168 months imprisonment on Counts Two and Three, with all counts running concurrently. (Exhibit 3).

Torres appealed through retained counsel. Torres' initial brief (Exhibit 4), raised six issues:

Issue One

The Trial Court Committed Fundamental Error in Instructing on Premeditated Murder

Issue Two

The Trial Court Erred in Allowing the Impeachment of Ms. Williams, when she had not Given Inconsistent Testimony

Issue Three

The Prosecution Repeatedly Elicited Hearsay and a *Bruton* Violation,  Amounting to Fundamental Error

Issue Four

The Trial Court Erred in Admitting Testimony Concerning Collateral Crimes Committed by a Codefendant

---

[1] Respondent filed the six-volume trial transcript as Exhibit 31.

Issue Five

The Appellant had Ineffective Assistance of Counsel

A. Failure to object to premeditation instruction

B. Failure to object to hearsay and *Bruton* violation.

C. Failure to object to threats made by a codefendant to a state witness.

D. Failure to request an independent acts instruction.

Issue Six

The Trial Court Abused its Discretion in Limiting the Appellant's Voir Dire

After the State filed its answer brief (Exhibit 5), and Torres filed a reply brief (Exhibit 6), Torres filed a supplemental brief challenging the constitutionality of Florida's 1995 guidelines, after being granted leave to do so by the state district court of appeal.(Exhibit 7). The State filed a supplemental answer brief. (Exhibit 8). The state district court of appeal heard oral argument on April 28, 1999. (Exhibit 9). On July 21, 2000, in Case No. 2D97-5137, the Second District Court of Appeal filed a written opinion affirming Torres' convictions, but remanding for reconsideration of the guidelines sentences imposed on Counts Two and Three. (Exhibit 10). *Torres v. State*, 779 So. 2d 393 (Fla. 2d DCA 2000). Torres moved the state district court of appeal to certify conflict to the Florida Supreme Court. (Exhibit 11). The state district court of appeal denied the motion on September 1, 2000. (Exhibit 12). The mandate issued September 29, 2000. (Exhibit 13). Prior to issuance of the mandate, Torres filed a petition for discretionary review in the Florida Supreme Court in Case No. SC00- 2077.

The Florida Supreme Court denied review on March 27, 2001. (Exhibit 14). *Torres v. State*, 789 So. 2d 351 (Fla. 2001)[table].

On May 16, 2001, on remand from the state district court of appeal, the state trial court rendered an Order on Mandate. The order reflected that the state trial court had reconsidered Torres' sentences in Counts Two and Three in accordance with the mandate of the state district court of appeal and had determined that Torres was not entitled to be resentenced. (Exhibit 15). Torres did not appeal this ruling.

On March 19, 2002, Torres, through retained counsel, filed a Rule 3.850 motion for postconviction relief. (Exhibit 16). On October 29, 2002, counsel filed an amended Rule 3.850 motion. (Exhibit 17). Torres raised ten grounds (with sub-claims) in the original and amended Rule 3.850 motions. Nine grounds were based on ineffective assistance of trial counsel and the tenth was based on newly discovered evidence. On December 3, 2002, the state trial court summarily denied three grounds, and directed the State to respond to the remaining eleven grounds.  (Exhibit 18). In its response, the State conceded Torres was entitled to an evidentiary hearing on the eleven remaining grounds.

On March 27, 2003, Torres' retained postconviction counsel filed a second amended Rule 3.850 motion, raising the same ten grounds (with  sub-claims) previously raised in the first two motions, as well as three additional ineffective assistance of counsel claims. (Exhibit 19). On April 17, 2003, the state trial court issued an order granting an evidentiary hearing on seven grounds, and directing the State to respond to the additional ineffective assistance of counsel grounds raised in the

second amended Rule 3.850 motion. (Exhibit 20). Over the ensuing months, hearings were held before the state trial court judge on March 4, 2004,  April 27, 2004, and July 27, 2005. (Exhibits 21, 22, and 23, respectively). Retained counsel represented Torres at the hearings.

On January 10, 2006, the state trial court issued its final order denying the motion for postconviction relief. (Exhibit 24). Torres, through counsel, appealed the January 10, 2006, final order denying relief and the October 5, 2005, order denying Torres' motion to reopen the evidentiary hearings to allow Jose Manuel Castro to testify. (Exhibit 25).

Torres' retained counsel filed an initial appellate brief challenging only the state trial court's denial of eight grounds in the motions for postconviction relief, as well as the state trial court's failure to reopen the evidentiary hearing to allow Jose Manuel Castro to testify. (Exhibit 26). The State filed its answer brief (Exhibit 27), and Torres filed a reply brief. (Exhibit 28).

On April 13, 2007, in Case No. 2D06-421, the state district court of appeal per curiam affirmed the state trial court's denial of postconviction relief. (Exhibit 29). *Torres v. State*, 954 So. 2d 35 (Fla. 2d DCA 2007)[table]. The mandate issued May 4, 2007. (Exhibit 30).

Torres, through his retained counsel, timely filed the present federal petition on August 7, 2007. The petition raises three grounds for relief, with sub-claims:

GROUND ONE

DENIAL OF DUE PROCESS UNDER 5TH AND 14TH AMENDMENTS WHEN THE TRIAL COURT SUBMITTED THE PREMEDITATED MURDER CHARGE TO THE JURY.

GROUND TWO (WITH SUB-CLAIMS a-k)

INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF PETITIONER'S 6TH AND 14TH AMENDMENT RIGHTS.

GROUND THREE

IMPROPER PROSECUTORIAL COMMENTS DURING SUMMATION.

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

Standard for Procedural Default/Procedural Bar

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell,* 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review. "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845). This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance. *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly

in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Torres must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982). Torres must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell,* 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); , 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson,* 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be

credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"[t]he Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance

claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

Discussion

Procedurally Barred Grounds

Grounds One and Three, as well as the allegations in Ground Two (b), (f), (g), (h), (i), and (j) are procedurally barred, leaving Grounds Two (a), (c), (d), (e), and (k) for consideration on the merits. Torres has not shown cause and prejudice to overcome the procedural defaults, and has not shown that a manifest injustice will occur if the Court does not address the merits of the claims.

Even if the grounds were not procedurally barred, the claims would not merit habeas corpus relief.

Ground One

Torres asserts he was denied due process of law under the Fifth and Fourteenth Amendments to the Constitution when the state trial court submitted a premeditated murder charge to the jury that was not charged in the indictment. Torres raised this issue in his direct appeal. In its written opinion, the state district court of appeal found that the claim was procedurally barred because no objection was made by the defense to the instructions as given, and the case did not involve fundamental error under state law so as to avoid the procedural bar. Alternatively, the court concluded that, even if error existed, the error did not affect Torres' substantial rights. The state district court of appeal stated, in its opinion on direct appeal:

> Appellant, Osvaldo J. Torres, challenges his judgment and sentence for first-degree murder, armed burglary of a dwelling, and

-11-

armed robbery. We affirm. Appellant raises numerous errors in regard to his convictions, none of which we determine result in reversible error. There is possible error, however, in regard to appellant's sentence. We write briefly to explain why we conclude that his issue regarding the giving of a premeditated first-degree murder jury instruction cannot afford him relief and remand to the trial court for reconsideration of appellant's sentence.

The indictment charging appellant with first-degree murder provided in essential part as follows:

> The Grand Jurors of the County of Hillsborough, State of Florida, charge that William Tracy Hinson, Richard Margarejo, Osvaldo Javier Torres and Luis Davila Zuntiga, on or about the 18th day of January 1997, through and including the 25th day of January 1997, in the County of Hillsborough and State of Florida, did unlawfully and feloniously kill a human being, to-wit: Robert Lawrence Bryan, while engaged in the perpetration of or in an attempt to perpetrate the crime of armed burglary and/or armed robbery, contrary to the form of the statute in such cases made and provided, to wit: Florida Statute 782.04(1).

(Exhibit 1). This original indictment gave Torres sufficient notice of the premeditation element in the murder charges against him because the indictment cited the first-degree murder statute, which encompasses the specific element of premeditation. *Brown v. State*, 967 So. 2d 236 (Fla. 3d DCA 2007). In *DuBoise v. State*, 520 so. 2d 260, 264. (Fla. 1988), the Florida Supreme Court stated that the failure to include an essential element of a crime does not necessarily render an indictment so defective that it will not support a judgment of conviction when the indictment references a specific section of the criminal code which sufficiently details all the elements of the offense.

The state district court of appeal also stated:

The evidence supporting a conviction of appellant for felony first-degree murder was overwhelming.[2] There was also evidence from which the jury could have concluded that the murder was also premeditated. During jury selection, the prosecutor advised the panel that murder in the first degree may be proved by either felony murder or premeditated murder. Defense counsel raised no objection. After the jury was sworn, there was a discussion about the fact that both premeditated and felony murder theories and instructions would be submitted to the jury. Again, no objection was made. During the jury instruction conference at the end of the first day of trial, after going through both the premeditated and felony murder instructions, the following exchange occurred:

THE COURT: I'm assuming you're gonna stop me if you have any problems with any of these?

[DEFENSE COUNSEL]: Right.

Both the premeditated and felony murder instructions were read to the jury. Defense counsel raised no objection to the instructions after they were read. Appellant was found guilty as charged by a general verdict form.

Appellant relies upon *O'Bryan v. State*, 692 So. 2d 290 (Fla. 1st DCA 1997), and *Gaines v. State*, 652 So. 2d 458 (Fla. 4th DCA 1995), for his position that the giving of the premeditated first-degree murder instruction constituted fundamental error. Under the circumstances of this case, we find *O'Bryan* and *Gaines* unpersuasive and conclude that the instruction on premeditated first-degree murder was not fundamental error and, if error, did not affect appellant's substantial rights. *See Ables v. State*, 338 So. 2d 1095 (Fla. 1st DCA 1996).

*Torres v. State*, 779 So.2d 393, 394 (Fla. 2d DCA 2000).

As stated by the state district court of appeal, the claim is procedurally barred

because it was not preserved at trial by objection to the jury instruction on first degree

premeditated murder. See Fla. R. Crim. P. 3.390(d) ("No party may raise on appeal the

giving or failure to give an instruction unless the party objects thereto before the jury

---

[2] See Appendix A to this order for a summary of the facts adduced at trial.

retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection."); *Perez v. State*, 919 So. 2d 347 (Fla. 2005).

Torres has not argued nor demonstrated cause and prejudice to overcome the procedural default and has not shown that a fundamental miscarriage of justice will occur if this Court does not reach the merits of this claim because the "evidence at trial was overwhelming." (See Appendix A to this Order for a summary of the facts adduced at trial).

Furthermore, as discussed above, Torres cannot show that he is entitled to habeas relief on the merits of the claim. A defendant found guilty of first-degree murder on a general verdict form that did not specify whether the verdict was based on premeditated or felony murder will be upheld on appeal where the evidence is sufficient to establish either felony murder or premeditation. *See Jones v. State*, 748 So.2d 1012, 1024 (Fla.1999); *Mungin v. State*, 689 So.2d 1026, 1029-30 (Fla.1995).

Any error in instructing the jury on premeditated murder based on insufficient evidence of premeditation is necessarily harmless. *See Jones, 748 So.2d at 1024* ("[E]ven if the evidence does not support premeditated murder, any error in charging the jury on that theory is harmless where the evidence supports a conviction for felony murder, which has also been charged." ); *Mungin*, 689 So.2d at 1029-30 (concluding that error in instructing on felony murder was "clearly harmless" where evidence supported conviction for felony murder and the jury properly convicted defendant of first-degree murder on this theory). *See Crain v. State*, 894 So. 2d 59, 73 and 73 n16 (Fla. 2004).

Ground one does not merit habeas corpus relief because the claim is procedurally barred and because the claim has no merit.

## Ground Two

Torres contends he was denied effective assistance of trial counsel in violation of his Sixth Amendment rights. Torres raises twelve separate allegations of ineffectiveness.

**(a) Trial counsel failed to object to the trial court's instruction on a charge not included in the indictment.**

Torres claims trial counsel was ineffective for failing to object to the court's instruction on premeditated murder. This claim was summarily denied by the state trial court in its December 3, 2002, order:

> . . . Defendant alleges counsel was ineffective for failing to object to the submission of the premeditated murder jury instruction to the jury. Defendant specifically claims that since the Indictment only alleged the elements of first degree felony murder, and not the elements of first degree premeditated murder, the court may only instruct the jury on first degree felony murder. Defendant cites *Ables v. State*, 338 So. 2d 1095 (Fla. 1st DCA 1976), in support of his allegation, and states that this error prejudiced him by allowing the jury to convict him of a crime that was not charged against him.
>
> A review of the Indictment reflects that Defendant was charged with first degree felony murder. (See Indictment, attached). A review of the October 21, 1997 Transcript reflects that the jury was read instructions on both first degree premeditated murder and first degree felony murder. (See October 21, 1997 Transcript, pages 821 - 823, attached). Accordingly, even though Defendant was only charged with first degree felony murder, the charge of first degree premeditated murder was also submitted to the jury.
>
> In *Ables v. State*, 338 So. 2d 1095 (Fla. 1st DCA 1976), a case very similar to the one at hand, the defendant was charged by indictment with first degree felony murder. At trial, however, the court instructed the

jury that it could "convict the accused of first degree murder if it found the accused killed the victim from a premeditated design [o]r in perpetrating kidnaping." *Id.* at 1096. The court, relying on *Perkins v. Mayo*, 92 So. 2d 641 (Fla. 1957), *Penny v. State*, 191 So. 190 (Fla. 1939), and Fla. Const. art. I, § 16, held that "[t]hat [the premeditated murder instruction] was error, for an accused is entitled to have the charge proved substantially as laid; he cannot be charged with one offense and convicted of another, even though the offenses are of the same character and carry the same penalty." *Id.* However, the court ultimately stated that:

> While giving the extraneous charge was erroneous, we have concluded, upon consideration of the entire record, that the error did not adversely affect Torres' substantial rights. Evidence of his guilt of kidnap-murder was overwhelming, and any premeditation to murder arose in the course of the kidnaping. In these circumstances the erroneous charge could not have seriously misled the jury from its sworn duty to try the accused on the charges made by the indictment.

*Id.* at 1096.

A review of *Torres v. State*, 779 So. 2d 393 (Fla. 2d DCA 2000), reflects that this issue was previously raised on Defendant's direct appeal. The court, citing *Ables v. State*, 338 So. 2d 1095 (Fla. 1st DCA 1976), concluded "that the instruction on premeditated first-degree murder was not fundamental error, and if error, did not affect Torres' substantial rights." *Id.* at 394. Moreover, the court also stated that "[t]he evidence supporting a conviction of Torres for first-degree murder was overwhelming. There was also evidence from which the jury could have concluded that the murder was also premeditated."

Accordingly, since the Second District Court of Appeal previously examined this issue and determined that the evidence supporting a conviction for first degree murder was overwhelming, in addition to finding that there was evidence from which the jury could have found the murder was premeditated, this Court, relying on the reasoning set forth in *Ables v. State*, 338 So. 2d 1095 (Fla. 1st DCA 1976), is led to the conclusion that "in th[is] circumstance[] the erroneous charge could not have seriously misled the jury from its sworn duty to try the accused on the charges made by the indictment." *Ables,* 338 So. 2d at 1096. Therefore, Defendant fails to meet the second prong of *Strickland* by failing to show how this erroneous jury instruction prejudiced him. Since Defendant has failed to meet the second prong, it is unnecessary to

address the performance component. As such, no relief is warranted . . .

(Exhibit 18 at pp. 9-11).

The state trial court's conclusion that Torres failed to establish prejudice is objectively reasonable, inasmuch as defense counsel's failure to object to the premeditated first degree murder jury instruction resulted in no harm to Torres. Torres cannot show that the outcome of the proceeding would have been different had trial counsel objected. The claim does not merit relief.

**(b) Trial counsel denied Torres the opportunity to participate in jury selection.**

The state trial court denied this claim for lack of merit after an evidentiary hearing. (See Exhibit 24 at pp. 2-3). However, this claim is procedurally barred because it was expressly waived in Torres' initial brief in the postconviction appeal. Torres' appellate counsel stated in the brief, "While the Appellant raised thirteen claims in his motions for post-conviction relief at the circuit court level, he is only appealing the circuit court's decision on eight of the claims, specifically, claims two, three, four, six, seven, ten, twelve, thirteen and the court's failure to re-open the evidentiary hearing to allow Jose Manuel Castro to testify." (See Exhibit 26: Initial Brief of Appellant at p. 6). True to this statement, appellate counsel did not make any argument in the postconviction appeal that counsel was ineffective for denying Torres the opportunity to participate in jury selection.

Torres abandoned or waived this claim, and the claim is now unexhausted and procedurally barred from review in this Court. Florida law is that, in non-summary proceedings, briefs are required and failure to include and argue any preserved issue

-17-

in the initial brief acts as a waiver. *See Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (stating that a failure to fully brief and argue points on appeal "constitutes a waiver of these claims") (quoted in *Simmons v. State*, 934 So. 2d 1100, 1111 (Fla. 2006)). *See also, Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) ("[A]n issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief.").  In an unpublished opinion, the Eleventh Circuit addressed this issue and differentiated between a state postconviction appeal following a summary denial and an appeal following a postconviction proceeding for which an evidentiary hearing was granted, as it was in this case:

> Cortes's appeal did not follow an evidentiary hearing, and, therefore, he was not required to file an appellate brief. Furthermore, his decision to do so and to address only some of the issues does not waive the remaining issues raised in his Rule 3.850 motion. *See Webb v. State*, 757 So. 2d 608, 609 (Fla. Dist. Ct. App. 2000). Therefore, Cortes did exhaust his state remedies prior to filing his § 2254 petition. In contrast, had Cortes received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver. (footnote omitted).

*Cortes v. Gladish*, 216 Fed. Appx. 897, 898 (11th Cir. 2007).

Florida Rule of Appellate Procedure 9.141(b)(2) provides that in appeals from the summary denial of a Rule 3.850 motion without an evidentiary hearing, "[n]o briefs or oral argument shall be required, but any appellant's brief shall be filed within 15 days of the filing of the notice of appeal. The court may request a response from the appellee before ruling." Fla. R. App. P. 9.141(b)(2)(C). In contrast, in an appeal of a Rule 3.850 order after an evidentiary hearing, the movant is required to file an appellate brief, and a waiver of a claim results from submission of a brief without argument on a claim. *See, e.g., Shere v. State*, 742 So.2d 215, 224 n.6 (Fla. 1999)("In

a heading in his brief, Shere asserts that the trial court erred by summarily denying nineteen of the twenty-three claims raised in his 3.850 motion. However, for most of these claims, Shere did not present any argument or allege on what grounds the trial court erred in denying these claims. We find that these claims are insufficiently presented for review."); *Duest v. Dugger*, 555 So. 2d 849 (Fla. 1990)("Duest also seeks to raise eleven other claims by simply referring to arguments presented in his motion for postconviction relief. The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived").

Because Torres' postconviction appeal was from a rule 3.850 order after an evidentiary hearing, Torres was required to file a brief upon appealing the denial of postconviction relief and to provide argument relative to each claim raised in the appeal. *Reaves v. Crosby*, 837 So. 2d 396, 398 (Fla. 2003)(Other than one cursory sentence, there was no argument relative to a claim; claim was not properly before the state court where other than one cursory sentence, there was no argument relative to the claim). Because Torres abandoned this claim on appeal, it is now procedurally barred from review in this court. *See State v. Mitchell*, 719 So.2d 1245, 1247 (Fla. 1st DCA 1997), *rev. denied*, 729 So.2d 393 (Fla. 1999). By choosing not to brief the claim presented in Ground Two(b) of the instant federal petition, Torres waived and defaulted any argument pertaining to that issue.

Torres has not shown cause and prejudice to overcome the procedural default and has not shown that a fundamental miscarriage of justice will occur if this Court does not reach the merits of this claim. U.S. 72 (1977),

Torres cannot show valid cause to excuse his default because his collateral appellate counsel elected not to raise the claims Torres now raises in this Court.[3] Rather, as Torres' present counsel candidly acknowledges, Ground Three of this petition and other claims may not have been exhausted:

> Petitioner is aware of the requirement that he exhaust his remedies and raise all issues in the state form before raising them in his habeas petition. See *Rose v. Lundy*, 455 U.S. 509, 510 (1982). However, in the event that this Court should not feel that this particular issue, or, in fact, any other has not been exhausted, then he agrees to striking it and having the court address the remaining issues. See *Jones v. Bock*, 127 S.Ct. 910, 924-25 (2007). *See also Ogle v. Johnson*, ___ F.3d ___, 2007 WL 1713282 (11th Cir. 2007). As a remand to the state on this issue would be procedurally barred, this court may "forgo the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." *Kelley v. Sec'y, Dep't of Corrections*, 377 F.3d 1317, 1351 (11th Cir. 2004). See § 2254 petition at p. 24, n. 16.

Furthermore, even if the claim were not procedurally barred because Torres did not raise the claim on appeal of the denial of postconviction relief, the claim does not warrant habeas relief, because it has no merit.  The state trial court denied this claim stating:

> . . . Defendant alleges ineffective assistance of counsel for failure to allow Defendant to participate in jury selection. Specifically, Defendant alleges that, during voir dire, he made a list containing the names of

---

[3] The right to effective assistance of counsel does not attach to post conviction proceedings; there is no federal constitutional right to counsel in postconviction proceedings. *See Barbour v. Haley*, 471 F.3d 1222, 1227-1228 (11th Cir. 2006).

-20-

members he wanted stricken from the jury and names of those he wanted to keep as jurors, and then attempted to hand the list to his counsel, but counsel ignored his request and exercised sole discretion as to who would serve on the jury panel.  At the evidentiary hearing, the State noted, and the Court agrees, that:

> It is clearly reflected in the transcripts that Mr. Kromholz [Torres' defense counsel at trial] tells the Court that he discussed the list of proposed jurors with the Defendant, and the Defendant left it to his discretion. . . [T]hat's in the transcript and it is quoted.  Also, after the panel was chosen, it is in the transcript [that] Mr. Kromholz reviewed the list with the Defendant and the Defendant agreed. That's also in the transcript.  Mr. Kromholz also testified he picked the jury with the defendant's approval.

(Exhibit 24 at pp. 2-3).

The state court's ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[4]  28 U.S.C. § 2254(d).   Ground Two (b) is procedurally barred and has no merit.

**(c) Trial counsel failed to object to the admission of numerous instances of hearsay, and to a violation of *Bruton*** [5]

---

[4] The state trial court conducted an evidentiary hearing.  Its findings are "presumed to be correct" (28 U.S.C. § 2254(e)(1)) and there is no showing that its decision "was based on an unreasonable determination of the facts. . ." (28 U.S.C. § 2254(d)(2)).

[5] *Bruton v. United States*, 391 U.S. 123 (1968).

In the state trial court, Torres alleged trial counsel was ineffective for failing to object to the following hearsay testimony and *Bruton* violations for the following reasons:

> 1. Detective Flair testified that she had no suspects before she spoke with Carolyn Pearson. However, after Detective Flair interviewed Ms. Pearson, Mr. Torres and Mr. Hinson were suspects. (See October 20, 1997 Transcript, pages 356 - 361)
>
> 2. Detective Flair testified that after she interviewed William Tracy Hinson, a codefendant in this case, William Tracy Hinson, Richard Margarejo, Osvaldo Torres, and Luis Davila were suspects. (See October 20, 1997 Transcript, pages 362 -363)
>
> 3. Detective Flair testified that after she spoke with Richard Margarejo, Mr. Torres was still a suspect. (See October 20, 1997 Transcript, pages 366 - 367)
>
> 4. Detective Flair testified that based on her interview with William Tracy Hinson, she obtained a search warrant for Richard Margarejo's residence and vehicles and an arrest warrant for Richard Margarejo. (See October 20, 1997 Transcript, pages 363 - 364)
>
> 5. Detective Flair testified that another detective went to the Holiday Inn Express and found out that a room there was registered to Luis Davila for one night. Detective Flair also testified that she "determined" that Osvaldo Torres and William Tracy Hinson stayed at the Safari Inn on Busch Boulevard within days of Mr. Robert Bryan's death. (See October 20, 1997 Transcript, pages 378 - 379).

The state trial court directed the State to respond to allegations 1 and 5. The state trial court rejected Torres' argument regarding the *Bruton* claim as to allegations 2, 3, and 4, but directed the State to respond to the hearsay aspect of those statements. (See Exhibit 18 at pp. 5- 6).

The *Bruton* Claim

Torres contends that the *Bruton* violation occurred when Detective Flair testified regarding conversations with Margarejo and Hinson because neither of these co-indictees testified, and thus, were not subject to cross-examination as *Bruton* requires. According to Torres, Detective Flair's testimony provided a direct link between Torres and the crime and was the basis for a search warrant. Torres alleges there was no other evidence presented to support this link "unless Pearson testified, and that Flair's testimony created the impression that Davila's testimony was corroborated by three witnesses who did not testify, two of whom were co-indictees." Torres contends that, in the absence of this "improperly admitted testimony, the state's case became dependent solely upon the Davila testimony."

In *Bruton v. United States*, 391 U.S. 123 (1968),  a confession of a codefendant who did not take the stand was used against *Bruton* in a federal prosecution. The Court held that Bruton had been denied his rights under the Confrontation Clause of the Sixth Amendment. Since the Confrontation Clause is applicable as well in state trials by reason of the Due Process Clause of the Fourteenth Amendment (*Pointer v. Texas*, 380 U.S. 400 (1965), the rule of *Bruton* applies in Torres' case.  In general, Courts have condemned practices designed to circumvent *Bruton* by asking a witness what he learned from an out-of-court declarant. *See, e.g., United States v. Figueroa,* 750 F.2d 232, 240 (2d Cir.1984); *United States v. Check*, 582 F.2d 668, 678-79 (2d Cir.1978).

However, even a blatant *Bruton* error is harmless when evidence produced at trial other than that derived from the *Bruton* error indicates the defendant's full participation in the crime. *See United States v. Dulcio*, 441 F.3d 1269, 1276 (11th Cir. 2006) (citing *United States v. Gonzalez*, 183 F.3d 1315 (11th Cir. 1999)). *See also*, *Harrington v. California*, 395 U.S. 250 (1969). In the present case any *Bruton* error is harmless because the evidence against Torres was overwhelming. (See Appendix A for facts adduced at trial). *See McDaniel v. State*, 566 So. 2d 941 (Fla. 2d DCA 1990).

Since any *Bruton* error was harmless error, Torres cannot show that trial counsel was ineffective for failing to object at trial to the admission of Detective Flair's statements. In addition, Torres cannot show that the outcome of the proceeding would have been different if trial counsel had objected.

### Hearsay Testimony

After conducting evidentiary hearings, the state trial court denied the hearsay claims based on the following findings of fact and conclusions of law:

> . . . Defendant alleges ineffective assistance of counsel for failure to object to hearsay testimony. The statements to which Defendant alleges specifically are as follows, all of which were made by Detective Flair:
>
> a. Detective Flair testified that, after she interviewed William Hinson, Mr. Hinson, Mr. Margarejo, Mr. Davila, and Defendant were suspects.
>
> b. Detective Flair testified that after she spoke with Mr. Margarejo, Defendant was still a suspect.
>
> c. Detective Flair testified that, based on her interview with Mr. Hinson, she obtained a search warrant for Mr. Margarejo's residence and vehicles, and an arrest warrant for Mr. Margarejo.

-24-

d. Detective Flair testified that another detective went to the Holiday Inn Express and found out that a room there was registered to Mr. Davila for one night, and testified that she "determined" that Defendant and Mr. Hinson stayed at the Safari Inn on Busch Boulevard within days of the victim's death.

Testimony presented at the July 27, 2005, hearing indicates that Mr. Kromholz did make objections during Detective Flair's testimony:

> [I]f you go through Detective Flair's whole testimony, there were portions that Mr. Kromholz did object to in her testimony. Most of it was overruled by [the Court]. What Detective Flair was doing was basically going through her report and saying I did this after I did this after I did this. She never said the substance of what any of these people said. In fact, all of it came out during trial. At one point Mr. Kromholz even made an objection [after the State asked "After you spoke with Carolyn Pearson tell the jury where she took you," and Detective Flair was going to say "to Mr. Torres' home," [but] Mr. Kromholz objected and it was overruled.

Transcript, July 27, 2005, p.53, attached.

Additionally, Mr. Kromholz testified that he chose at what moments to object as a matter of strategy:

| MR. KROMHOLZ: | The way I saw it, sitting there in a courtroom for trial, I didn't think it was harmful he was being referred to as a [suspect]. |
|---|---|
| THE STATE: | Is that your strategy during a trial not to object to every single thing? Some attorneys object to every work out of a witness' mouth and some don't. They wait for things that impact? |
| MR. KROMHOLZ: | My practice depends on whether I want to call attention to it or whether I am going to |

keep something out or if it is going to inevitably come in. If the state gets on a consistent role [sic] you may want to get up and knock it off. I finally at one point said that was enough.

THE STATE: You did object at some point, and, in fact, you objected throughout the trial to various issues?

MR. KROMHOLZ: That's true. There were several as Mr. Gomez[6] pointed out that I let go and the strategy was I am not going to jump up and call attention to this. I see this is obvious. He is the suspect.

Transcript, March 4, 2004, p.51, attached.

The Court notes that strategic decisions of counsel will not be second-guessed on collateral attack. *See Wilson v. Wainwright*, 474 So. 2d 1162 (Fla. 1985). Furthermore, the trial tactics employed by counsel in the pursuit of strategy are to be left alone as long as counsel's performance is within the range of "reasonably competent counsel." *Stevens v. State*, 552 So. 2d 1084 (Fla. 1989). Here, not only did counsel make some objections to these statements, but it is clear also from counsel's testimony that the decision whether and when to object to these statements was strategic. As such, Defendant is entitled to no relief. . .

(Exhibit 24 at pp. 3-4).

The state court's conclusion that defense counsel's actions were the result of

a reasonable trial strategy is supported by the evidence and entitled to deference under

the AEDPA. A trial counsel's strategic or tactical choices in a criminal case, after a

---

[6] Mr. Gomez was Torres' postconviction retained counsel.

thorough investigation of the law and facts, "are virtually unchallengeable." *Strickland*, 466 U.S. at 689-690. Moreover, the fact that a chosen strategy or defense was ultimately unsuccessful does not mean that counsel's performance was ineffective. *See Zamora v. Dugger,* 834 F.2d 956, 959 (11th Cir. 1987) (attorney's tactical decision to employ an insanity defense may not have been successful in retrospect, but *Strickland* allows trial counsel great latitude to conduct a defense).

The state court's ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[7]  28 U.S.C. § 2254(d).

This claim does not warrant federal habeas corpus relief.

**(d) Trial counsel failed to object to a violation of the rules of discovery of constitutional dimension and (f) Trial counsel failed to call a key alibi witness on behalf of Torres**.

In (d), Torres claims trial counsel was ineffective for failing to object to a discovery violation. Torres alleges that his trial counsel should have objected to the State's violation of Florida Rule of Criminal Procedure 3.220 and to the State's failure to give notice of its rebuttal witnesses until the trial was in progress. Torres contends that mere days before the trial the State notified defense counsel of its intent to call two

---

[7] The state trial court conducted an evidentiary hearing.  Its findings are "presumed to be correct" (28 U.S.C. § 2254(e)(1)) and there is no showing that its decision "was based on an unreasonable determination of the facts. . ." (28 U.S.C. § 2254(d)(2)).

witnesses to rebut the defendant's alibi defense. Torres asserts that as a result of the State's actions, defense counsel failed to call his alibi witness to testify, which prejudiced Torres.

In (f), Torres claims that trial counsel was ineffective for filing to call Michelle Soto as an alibi witness.  This claim was abandoned by counsel in the postconviction appeal, and is therefore procedurally barred. Furthermore, on the merits, the claim does not warrant relief.

The state trial court denied these claims for lack of merit following an evidentiary hearing:

> . . .Defendant alleges ineffective assistance of counsel for failure to object to a discovery violation. Specifically, Defendant alleges that his counsel was ineffective for failing to object to the State's violation of Florida Rule of Criminal Procedure 3.220 and to the State's failure to give notice of its rebuttal witnesses until the trial was in progress. Defendant contends that it was not until mere days before the trial the State notified defense counsel of its intent to call two rebuttal witnesses to rebut the defense's alibi. He asserts that, as a result, his counsel failed to call his alibi witness to testify, which prejudiced Defendant.

> Defendant alleges ineffective assistance of counsel for failure to call this alibi witness, Michelle Soto.  Specifically, Ms. Soto was set to testify that she had made a trip with Defendant to Cross City Correctional Institution on the date of the robbery and murder. However, in the evidentiary hearing on March 4, 2004, Defendant's trial counsel testified that he had learned that Ms. Soto's statements were "no longer the truth," which "gutted" his alibi defense. (*See* Transcript, March 4, 2004, p. 21, attached). The Court finds that counsel cannot be deemed ineffective for failing to call an alibi witness whose testimony he knew to be untruthful. As such, Defendant is entitled to no relief on ground five. Additionally, the Court finds that, because defense counsel did not call the alibi witness to testify, Defendant was not prejudiced by his counsel's failure to object to the State's failure to give notice of alibi rebuttal witnesses. As such, Defendant warrants no relief on ground three of his Motion.

(Exhibit  24 at pp. 4-5).

Ground 2(d) does not warrant relief on the merits.  The state court's ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

Ground 2(f) is procedurally barred. Torres has not shown cause and prejudice to overcome the procedural bar and has not shown that a manifest injustice will occur if this Court does not reach the merits of the claim.  Furthermore, the state trial court's ruling on Ground 2(f) was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). These claims do not merit habeas corpus relief.

**(e) Trial counsel failed to seek a continuance following the eleventh hour admission of surprise rebuttal testimony.**

The state trial court summarily denied this claim:

> Defendant alleges counsel was ineffective for failing to move for a continuance. Defendant claims that as a result of the State's last minute disclosure of its rebuttal witnesses, defense counsel elected not to present an alibi defense. Due to this late disclosure, and the last minute decision to not present an alibi defense, Defendant alleges that defense counsel proceeded without a coherent theory of defense. Defendant claims that had defense counsel requested a continuance, he could have prepared a coherent theory of defense.

Specifically, Defendant claims that in defense counsel's closing argument, counsel stated that facts showed that Defendant had not participated in the commission of the crime. Defendant alleges there was an incoherent theory of defense since in addition to counsel arguing that Defendant did not participate in the commission of the crime, counsel offered an alternative argument stating that if the jury believed that Defendant participated in the robbery, but someone else returned to the house after the robbery, Defendant was still not liable for the death of Mr. Bryan. (*See October 21, 1997 Transcript, pages 769-788 attached*).

After reviewing Defendant's Motion, the Court finds that Defendant has failed to specifically demonstrate how he was prejudiced by defense counsel offering alternative theories during closing argument. Additionally, in light of *Strickland*, Defendant has failed to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Lastly, after reviewing defense counsel's opening statement, presentation of evidence, closing argument, and *State v. Williams*, 797 So. 2d 1235 (Fla. 1002), Defendant has failed to demonstrate how counsel performed deficiently. Defendant has failed to demonstrate how counsel performed deficiently. Accordingly, Defendant has failed to meet the test as set forth in *Strickland*.

The Court further notes that Defendant alleges that counsel, if he had moved for a continuance, could have prepared a coherent theory of defense. Defendant, however, does not allege what this alternative coherent theory of defense consisted of, nor does Defendant argue that another theory of defense existed. however, general allegations or mere conclusion are insufficient to demonstrate entitlement to relief. *Reaves v. State*, 593 So. 2d 1150, 1150 (Fla. 1st DCA 1992). As such, no relief is warranted . . .

(Exhibit 18 at pp. 6-7).

Torres' inability to establish that he was prejudiced by counsel's failure to seek a continuance is fatal to this claim. The state court's ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding. 28 U.S.C. § 2254(d). This claim has no merit and does not warrant federal habeas corpus relief.

**(g) Trial counsel failed to request a jury instruction on withdrawal from the conspiracy.**

This claim is procedurally barred because it was not raised in Torres' postconviction motions. Although Torres complained his counsel was ineffective for failing to request a jury instruction on an "independent act" of a co-defendant, there was no reference in any of Torres' pleadings regarding withdrawal from the conspiracy. Consequently, the claim is unexhausted and procedurally barred because this specific allegation is a new allegation of ineffective assistance of counsel that was not raised in the state court.

If Torres asserts new allegations of ineffective assistance of counsel that were not timely and properly raised in state court, they may not be considered by this Court. *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992); *Jackson v. Herring*, 42 F.3d 1350, 1355 (11th Cir.), *reh. denied*, 51 F.3d 1052 (11th Cir. 1995).

This claim does not warrant habeas relief.

**(h) Trial counsel failed to object to opinion evidence regarding falsified handwriting.**

Torres raised this claim in state court, but the claim was affirmatively abandoned by Torres' postconviction appellate counsel in the initial brief on appeal and is therefore unexhausted and procedurally barred. Torres has not shown cause and prejudice to

overcome the procedural bar and has not shown that a manifest injustice will occur if this Court does not reach the merits of the claim.

Even if the claim were not procedurally barred, the claim does not warrant habeas corpus relief.  The state trial court summarily denied this claim:

> . . . Defendant alleges counsel was ineffective for failing to object to opinion evidence regarding falsified handwriting.  Defendant claims that the State had not laid any predicate that the expert had any specialized training and expertise in detecting falsified handwriting samples, nor had it laid any predicate showing that it is generally accepted within the field of handwriting comparison that an examining expert can determine whether a handwriting sample has been falsified. Defendant claims that due to counsel's failure to object to this testimony, the jury was allowed to hear the handwriting expert's testimony suggesting Defendant's consciousness of guilt.
>
> A review of the testimony of handwriting expert Bruce Anthony Dekracker reflects that the State laid a predicate for tendering Mr. Dekracker as an expert witness in questioned documents of identification and comparison.  (*See* October 21, 1997 Transcript, page 653, attached).  Accordingly, since the State tendered Mr. Dekracker as an expert witness, and defense counsel stipulated to Mr. Dekracker being an expert witness, defense counsel thereafter had no valid basis upon which to object to the expert's opinion testimony regarding Defendant's falsified handwriting. Therefore, Defendant fails to show how counsel was deficient for failing to object to Mr. Dekracker's testimony regarding Defendant's falsified handwriting.  Since Defendant fails to meet the first prong of *Strickland*, it is unnecessary to address the prejudice component.  As such not relief is warranted . . .

(Exhibit 18 at pp. 11-12).

The claim does not warrant relief because the state court's ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding. 28 U.S.C. § 2254(d). This claim does not

warrant federal habeas corpus relief.

**(i) Trial counsel failed to object to threats made by a codefendant to a state**

**witness.**

Torres alleges that trial counsel was ineffective for failing to object to threats to

a state witness made by a co-defendant.  Specifically, Torres claims that counsel failed

to object to Amy Williams' testimony that the Hillsborough County Sheriff's Office

relocated her because she had received threats from Mr. Margarejo and his family.

This claim was denied after an evidentiary hearing. (See Exhibit 24 at pp. 9-10).  This

claim is procedurally barred because it was waived/abandoned by Torres' appellate

counsel in the postconviction appeal.

Furthermore, the claim has no merit.  The state trial court addressed the merits

of the claim:

> . . . Defendant alleges ineffective assistance of counsel for failure
> to object to threats made by a co-defendant to a state witness.
> Specifically, Defendant claims that counsel failed to object to Amy
> Williams' testimony that the Hillsborough County Sheriff's Office
> relocated her because she had received threats from Mr. Margarejo and
> his family.   Defendant states that counsel's failure to object to this
> testimony prejudiced Defendant because Mr. Margarejo's bad character
> and consciousness of guilt reflected upon Defendant.  At the evidentiary
> hearing on March 4, 2004, Defendant's post-conviction counsel
> questioned Mr. Kromholz about why he did not object to the statement
> in question:

> MR. GOMEZ:          [Ms. Williams] testified and
>                     during her testimony she
>                     testified to a threat made by
>                     the co-defendant Margarejo to
>                     her?

MR. KROMHOLZ:   Yes.

MR. GOMEZ:   You did not object to that threat coming in?

MR. KROMHOLZ:   No.

MR. GOMEZ:   That threat was hearsay; is that correct?

MR. KROMHOLZ:   That's true.

MR. GOMEZ:   And it was prejudicial in trying to establish that these [sic] group of guys are bad guys.

MR. KROMHOLZ:   Well, I wanted them to be bad guys. I think the follow-up question later on was that there [were] no threats from [Defendant] came out on cross. It shows [co[defendant Margarejo] is a bad person.

Transcript, March 4, 2004, pp. 29-30, attached.

Later, when Mr. Kromholz was again asked why he did not object to the statements about the threats, which suggested that co-Defendant Margarejo was a "bad guy," Mr. Kromholz stated that "we want everybody to believe that the other people [the co-defendants] were much more terrible." Transcript march 4, 2004, p. 55, attached. The transcript reflects, essentially, that Mr. Kromholz did not object because he thought the testimony made Defendant look better by comparison, thus helping his case. As discussed above a strategic decision and trial tactic such as this will not be second-guessed on collateral attack. *See Wilson v. Wainwright*, 474 so. 2d 1162 (Fla. 1985). As such Defendant is not entitled to relief . . .

(Exhibit 24 at pp. 9-10).

The state court's ruling was not contrary to, or an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United

States; and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). This claim is procedurally barred and without merit.

**(j) Trial counsel failed to object to the failure of the State to disclose certain statements of Mr. Torres that would have led to a reversal on appeal.**

Torres claims counsel should have objected to Tracy Beckwith's testimony, wherein she told the jury she had contact with Torres soon after the crime occurred, during which time Torres expressed concern that one of the gloves supposedly worn during the robbery "wasn't worn throughout the whole thing" so that fingerprints might have been left at the crime scene. (Exh 31: Vol. 3: T 444-445).  This claim is procedurally barred because Torres abandoned the claim in the appeal from the denial of his motions for postconviction relief.

Even if the claim were not procedurally barred, the claim would not warrant habeas corpus relief on the merits of the claim. The state trial court dismissed this claim after an evidentiary hearing:

> . . . Defendant alleges ineffective assistance of counsel for failure to object to a discovery violation regarding an undisclosed statement about Defendant. Specifically, Defendant claims that the State failed to disclose statements by Ms. Beckwidth, [sic] the mother of co-defendant Hinson's daughter, which then came out in trial.[4] The Court finds that the evidence presented at the evidentiary hearings indicates that the statements in question were not undisclosed statements:
>
> > 4 The allegedly undisclosed statements came from Ms. Beckwidth [sic] who was with Defendant and a co-defendant Hinson at the Safari Inn shortly after the crime's occurrence.  The statements have to do with seeing all the marijuana in that room and hearing something about a left-behind glove. (*See* Transcript, March 4, 2004, p. 57, attached).

THE STATE: You testified in your deposition that although we didn't put that statement in writing anywhere we can find you now about that statement?

MR. KROMHOLZ: The statement didn't take me by surprise.  Like I said before as I am thinking through it I can't say how I knew about that statement.  I [sic] didn't take me by surprise when it happened.  Part of it may have been realizing you guys had a detective that contradicted that.

Transcript, March 4, 2004, p. 57, attached.

Further, the State argues, and the Court agrees that:

Mr. Kromholz testified he thought that he did not know about those statements.  He was told prior to the trial that Mr. Cox also said he made him aware of those statements.  There were statements that were coming out.  These were by Tracy Beckwidth [sic] I believe.  In fact, Mr. Kromholz did a good job of trying to combat that because he know they were coming out. He knew they were going to happen at trial.  He called Detective Flair in his case to say that Tracy Beckwidth [sic] never originally told Detective Flair those statements about [Defendant].  She overheard [Defendant] tell [co-defendant] Hinson about he left the glove behind.

Transcript, July 27, 2005, p. 58, attached.

As the Court finds that these statements were not undisclosed statements, as alleged, counsel cannot be deemed deficient for failing to object when there was no discovery violation requiring objection.  As such, Defendant warrants no relief on ground eleven of his Motion.

(Exhibit 24 at pp. 11-12).

The state court's ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  This claim is procedurally barred and has no merit.

**(k) Trial counsel failed to call or investigate the potential of certain witnesses that could have refuted a significant portion of the State's case.**

Torres argues trial counsel should have interviewed two of Bryan's (the victim's) neighbors who had reported to police that they had seen an individual with similar physical characteristics to Margarejo in the area of Bryan's home on the day of the crime. Torres contends this testimony would have supported his theory that Margarejo returned to the scene of the crime and bound the victim with additional duct tape. Torres raised this ground in his Rule 3.850 motion for postconviction relief.

Following the evidentiary hearings, the state court reasonably rejected Torres' argument for the following reasons:

> . . . Defendant alleges ineffective assistance of counsel for failure to call the victim's neighbors as witnesses to testify at trial. Specifically, Defendant claims that counsel was given reports from Deputies Vicks and Spano that contained information from interviews with two of the victim's neighbors, both of whom, Defendant alleges, gave descriptions of persons in the area that matched co-defendant Margarejo's build. The Florida Supreme Court has held that a court is correct in finding that there is no deficient performance by counsel for failing to call witnesses who are neither credible, reliable, or relevant, so long as the court provides its reasoning for so finding. S*ee Happ v. State*, 30 Fla. L. Weekly S 839, (Dec. 8, 2005). Here, the Court finds that counsel's decision not to call these witnesses does not amount to ineffective assistance of counsel, as the proffered testimony of the witnesses would not have been relevant to Defendant's defense. At the evidentiary

hearings, both Defendant's trial counsel and the state attorney involved in Defendant's prosecution testified that these possible witnesses' testimony would not have benefitted Defendant's defense. During the hearing on March 4, 2004, Defendant's trial counsel testified as to why he decided not to call at trial the victim's neighbors to testify to their description of the people they saw:

THE STATE:          Could you tell us again your fear about calling the neighbors and their vague description of the people they saw?

MR. KROMHOLZ:   I thought the description was vague in general, enough that it could be interpreted to be [Defendant] himself. It was not a description that took him out of the realm of possibility.

Transcript, March 4, 2004, p. 58, attached.

Nick Cox, a State Attorney involved in Defendant's prosecution, added the following testimony:

THE STATE:          In your opinion, did those neighbors in any way implicate or help Defendant.

MR. COX:            No. My understanding [was that] they said they saw somebody, I don't recall where they saw somebody in the area. There was a description being given. I recall part of the description that someone looked mean. There was nothing based on my recall that described [co-defendant] Margarejo or any other defendant or that was relevant to any particular time following the time of the original robbery and burglary.

Transcript, March 4, 2004, p. 87, attached.

As such, the Court finds that counsel's decision not to call these witnesses is neither deficient nor does it amount to ineffective assistance of counsel, and Defendant warrants no relief . . .

(Exhibit 24 at pp. 12-13). Because the information possessed by the victim's neighbors was too vague to provide testimony helpful to Torres, and could have been harmful, the state trial court's conclusion that Torres failed to prove trial counsel was ineffective for failing to call the neighbor-witnesses was objectively reasonable and this claim does not warrant habeas relief.

**(l) Trial counsel failed to properly cross-examine the "main codefendant"  and elicit evidence favorable to Torres**.

Torres faults counsel for failing to elicit favorable evidence from co-defendant Luis Davila-Zuniga. The state trial court, after an evidentiary hearing, rejected the claim because Torres failed to show prejudice.  That finding is objectively reasonable. The state trial court's order reads, in part:

> . . . Defendant alleges ineffective assistance of counsel for failure to elicit favorable evidence from co-defendant Luis Davila-Zuntiga. Specifically, Defendant alleges that Mr. Davila-Zuntiga could have testified about the phone at the scene of the crime and whether it was on or off the hook, and that this testimony would have supported Defendant's theory that someone else returned to the house following the robbery. Defendant claims that Mr. Davila-Zuntiga gave a sworn statement wherein he stated that he did not think anybody touched the phone inside the victim's house during the robbery. At trial, the victim's friend testified that she tried to call him a day or two before finding the body, but did not get a busy signal. When law enforcement entered the victim's home, however, the phone receiver was off the hook. Defendant asserts that this evidence would have supported his theory of defense that someone else returned to the house after the robbery. He states that, although Mr. Davila-Zuntiga testified at trial, defense counsel never

elicited information regarding the victim's phone. Defendant asserts that counsel's failure to elicit this testimony prejudiced him.

  The Court again notes that the evidence in this case was "overwhelming." *See Torres v. State*, 779 So. 2d 393, 394 (Fla. 2d Dist. Ct. App. 2000). At the evidentiary hearings, it was clear that Mr. Davila-Zuntiga's testimony was corroborated by an abundance of evidence. (*See* Transcript, July 27, 2005, pp. 43-45, attached). The Court finds that Defendant has failed to prove that counsel's failure to elicit particular statements from Mr. Davila-Zuntiga on cross-examination prejudiced Defendant. As Defendant has not shown the required prejudice necessary under *Strickland v. Washington*, 466 U.S. 668 (1984), the Court finds he is entitled to no relief. . .

(Exhibit 24 at pp. 13-14).

The state court's ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d) and this claim does not warrant habeas corpus relief.

## Ground Three

Torres contends that during closing argument at trial, the prosecutor improperly commented on Torres' right to remain silent. Torres concedes defense counsel objected, and the trial court sustained the objection, but that no curative instruction was given. Torres claims this is such an egregious error that it violates Torres' right to due process.

This claim is procedurally barred because it was not raised on direct appeal, nor was it raised in any postconviction proceeding. Torres' claim is not exhausted and would be barred if he returned to state court. *See Coleman v. Thompson*, 501 U.S.

722, 735 n.1 (1991); *Tower v. Phillips*, 7 F.3d 206,210(11th Cir. 1993). It would be futile to dismiss this case to give Torres the opportunity to exhaust his claim, because the claim could have and should have been raised on direct appeal.

### Summary

Ground One is procedurally barred because defense counsel failed to object to the jury instruction on premeditated first degree murder at trial. Ground Three is procedurally barred because Torres never raised the ground in state court for review. Grounds Two (b), (f), (g), (h), (i), and (j) are procedurally barred because they were affirmatively abandoned in the postconviction appeal. As to Grounds Two (a), (c), (d), (e), and (k), the trial court recognized the proper *Strickland* standard for analyzing ineffective assistance of counsel claims, and the court's denial of those claims was neither contrary to, nor an improper application of, Supreme Court precedent. Pursuant to the AEDPA standard of review, those claims must be denied.

Accordingly, the Court orders:

That Torres' petition is denied. The Clerk is directed to enter judgment against Torres and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional

right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 28, 2008.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record

Appendix A

Facts Adduced at Trial

**1990-1991**: Defendant Hinson and victim Robert Bryan were roommates. (R4: 440)(R6: 527) They grew marijuana together. (R4: 443, 449)(R6: 527)

**January or February, 1995**: Hinson and Bryan were arrested together on marijuana charges. (R4: 454)(R6: 609, 614-15)

**1997**: At the time of his murder, Bryan was an agoraphobic who did not leave his house very often. (R4: 320) He lived alone and slept in the family room. (R4: 321, 329, 332)  The room contained a sliding glass door, which had earlier been "broken out." (R4: 321-22, 340-41) The remainder of the residence was used to grow marijuana. (R4: 341-42)

**Mid-late January, 1997**: Hinson came to Tampa from South Carolina, his home state. (R4: 439-40) He rented a motel room. (R6: 556)

**Friday, January 17, 1997**: Hinson telephoned Davila at Davila's home and asked for Torres' beeper number.[8]  (R6: 523) Davila did not have it, but was willing to contact Torres for Hinson. (R6: 523-24) Hinson then went to Davila's residence and told Davila that he wanted to rob Bryan, and  said that if  Davila wanted to help, they would make $40,000 - $80,000 "in marijuana."  Hinson stated he wanted revenge on Bryan because Hinson and Bryan had previously been arrested for growing marijuana, and Bryan had failed to pay for Hinson's lawyer. (R6: 526) Hinton wanted Torres' beeper number to ask if he wanted to participate as well. (R6: 524-25) Davila agreed to participate. Hinson and Davila went to Torres' residence. (R6: 525) Hinson related the same plan to Torres, indicating that "it would be easy money." (R6: 526-28) After initial reluctance, Torres agreed to participate in the crime. (R6: 528) The three men decided to commit the crime the following day. (R6: 528)

**Saturday, January 18, 1997**: About 10:00 - 11:00 a.m., Torres and Hinson picked up Davila at his residence. (R6: 529) They drove around planning the crime. (R6: 530) Torres suggested they bring Margarejo into the plan because "he's crazy, he'll do anything[.]" (R6: 530- 31) Margarejo was at home with his girlfriend Amii Williams when Torres arrived about noon. (R4: 469, 471) Williams heard Torres ask Margarejo if he wanted to make some money. (R4: 471) After a few minutes Torres left the residence. (R4: 471) About 2:00 p.m. Torres returned to Margarejo's residence with Hinson and Davila. (R4: 472) Hinson explained the plan to Margarejo as he had explained it to the other two men. (R6: 532) Margarejo agreed to participate. (R6: 532)

---

[8] Torres is also referred to in the record as "O."

Margarejo told the others to pick him up at 3:00 p.m. (R6: 533, 535) He also told them to get some tape, as they would need it. (R6: 533). Torres, Hinson and Davila went to Big Lots and purchased two pairs of brown cloth gardening gloves. (R6: 534) Then they went to Davila's house, where Davila obtained a pair of baseball batting gloves, a hat, and some duct tape from his truck. (R6: 534-35) Sometime after 3:00 p.m. they returned to Margarejo's residence. (R6: 535) Margarejo asked the others if they were ready, and everyone said yes. (R6: 537) Margarejo suggested they use Williams' gray Ford station wagon because it was not obvious. (R6: 537) All four left in the vehicle, with Margarejo driving. (R4: 472-73)(R5: 478)(R6: 538) Margarejo put an asp and a .45 automatic in the car. (R4: 473) (R6: 541-42) Torres and Davila traded gloves, because Torres liked the way the batting gloves fit and wanted to wear them. (R6: 545, 582) Margarejo did not wear gloves, because he stated he planned to take whatever he touched. (R6: 545) They arrived at Bryan's residence 30 - 35 minutes later. (R6: 538) A car was there, which remained after Hinson, Davila and Margarejo drove by several times. (R6: 538-39) They drove to a bar 20 away, where they remained 30 - 45 minutes. (R6: 539) Then Hinson got in the front seat to drive and Margarejo got in the back. Hinson knew Bryan and did not want to be seen, so the plan was that Hinson would "drop the others off" and then wait until the garage was opened. (R6: 540) Hinson told the others where to look for money in the house - he knew where it was stashed from his previous drug partnership with Bryan. (R6: 550-51) When Torres, Margarejo and Davila got out at Bryan's residence, Margarejo had the asp and Torres had the gun. (R6: 541-43) Davila had the duct tape. (R6: 544) Hinson drove around the block. (R6: 544) The three men entered the residence through the broken sliding glass door. (R6: 546) Bryan offered no resistance and urged them to take whatever they wanted. (R6: 546) Even so, Margarejo hit Bryan and told him to get on the floor. (R6: 546) Margarejo snatched the tape from Davila and taped Bryan's hands behind his back and his feet together. (R6: 547, 587) Then he grabbed the gun from Torres and told Davila and Torres to ransack the house. (R6: 547) Torres found the garage and opened it for Hinson to pull in the station wagon. (R6: 550) Torres and Davila gathered up the marijuana in the house and stuffed it into garbage bags. (R6: 551, 553-54) Davila observed Margarejo hit Bryan again and demand to know where he kept his money. (R6: 552) Hinson urged the others to take the cable box, so they grabbed it and the VCR. (R6: 554) Hinson searched the kitchen because he knew that Bryan kept his money there in aluminum foil. (R6: 554) After 30 - 35 minutes, they put everything in the car. (R6: 554-55) Hinson said, "Let's not worry about the guy because somebody's gonna find him." (R6: 555) They left Bryan taped up face down on the floor. (R6: 556) When the four defendants returned to Margarejo's residence about 6:30 - 7:00 p.m., Williams was there with Isabel Lopez.[9] (R5: 479, 481)(R6: 557)(R7: 738-40) Margarejo tried to clean out a shed in the backyard, but it was too small for the four of them to fit into the shed.  They were going into the shed to divide the money and the marijuana.

---

[9] Williams was not sure Torres returned to Margarejo's residence with the other three. (R5: 479) Neither was Lopez, though she thought it was possible he was there. (R7: 740-42).

(R6: 557) Because the shed was too small, they ran into the house with the garbage bags. (R4: 479)(R6: 557) They put the bags in the bedroom and blocked the doorway with a dresser. (R5: 480)(R6: 559) Williams saw the top part of a marijuana plant. (R5: 480) Lopez could smell the marijuana. (R7: 742) At Margarejo's request, Williams and Lopez left the residence in the station wagon. (R5: 480-81)(R7: 742) In the vehicle Williams found the asp, a glove and a mask. (R5: 481) The four defendants spread the marijuana out on newspapers on the bed and split it up four ways. (R6: 557) Three of them also got $600, and one got $700. (R6: 557) Torres got some of the marijuana and money. (R6: 557-58) Davila got the cable box and the VCR. (R6: 558) After 2 - 3 hours, Hinson, Torres and Davila left Margarejo's residence at about 10:00 - 11:00 p.m. Margarejo told them he never wanted to see them again. (R6: 559) Hinson wanted to rent a hotel room but had no I.D., so Davila rented one for him at the Holiday Inn Express Motel on Dale Mabry. (R4: 378)(R6: 560) Then Hinson dropped Davila and Torres at their residences, and Hinson returned to the motel. (R6: 561) Later Hinson picked up Torres and Davila again, and the three of them returned to the motel. (R6: 562)

**Sunday, January 19, 1997**: After going to 3 - 4 different clubs, the three men returned to the motel about 5:00 a.m. and went to sleep. (R6: 564) Davila awoke about 10:00 - 10:30 a.m. (R6: 564) Hinson talked Davila into renting a room for him for another night at the Safari Inn on Busch Boulevard, where Torres also got a room. (R4: 379)(R6: 564) Then Hinson drove Davila home at about 11:00 - 12:00 a.m. (R6: 564) Davila threw away the cable box because it did not work. (R6: 570) Torres telephoned Margarejo's residence and spoke with Williams. (R5: 482) Torres asked if Hinson could come by to pick up a mask he had left with Margarejo. (R5: 483-486) Hinson then went to Margarejo's residence and picked up a mask. (R5: 486) Hinson's girlfriend, Tracy Beckwith, visited him at the Safari Inn. (R4: 441) Hinson told Beckwith about a robbery and burglary he had committed with some other people. (R4: 442) When Hinson and Beckwith went to Torres' room, Hinson saw about ½ - 1 pound of fresh marijuana on a table drying under lamps. (R4: 442-44) Torres expressed concern to Hinson that a glove had been lost, and he was not sure if fingerprints had been left. (R4: 444-45)

**Wednesday, January 22, 1997**: Hinson and Beckwith left the Safari Inn and spent the night at Beckwith's father's house. (R4: 445) The medical examiner opined that victim Bryan died on this day or the following day. (R6: 684)

**Thursday, January 23, 1997**: Hinson and Beckwith traveled from Tampa to South Carolina. (R4: 445)

**Saturday, January 25, 1997**: When Bryan's friend Amy Techaria tried to call him several times without getting an answer, she became worried. (R4: 321-22) She went to his residence. She knocked on the door several times, called his name, and checked with the neighbors without getting any results. (R4: 323-24) Finally she went around to the back of the residence and found an unlocked door. (R4: 324) She

stepped inside and called Bryan's name. (R4: 324) She noticed that the house was in disarray and the refrigerator door was open. (R4: 325) Then she saw Bryan lying on the floor of the family room face down with his hands duct-taped behind him, and his feet and head taped. (R4: 325-26) Techaria ran to a neighbor's house and called police. (R4: 326)  When Detective Dorothy Flair arrived at the scene sometime after 8:15 p.m., she noted that there was a stack of newspapers in front of the house dated 1/19 - 1/25. (R4: 333, 339) The newspaper for 1/18 was found in a bathroom inside the residence and appeared to have been read. (R4: 333-34) She noted that Bryan's hands were bound behind his back with duct tape, his feet were bound together with large amounts of duct tape, and there was duct tape around his forehead. (R4: 341, 355) He had blood coming from his nose and mouth. (R4: 344) His pants had been pulled down. (R4: 352) There was a telephone underneath the mattress with the receiver off the hook, and a used roll of duct tape was laying on the floor. (R4: 352-53, 380-81, 383) Duct tape was also found in a kitchen drawer, and a small piece on the patio outside the sliding glass doors. (R4: 398-99) A brown cotton glove was found on the kitchen counter. (R5: 511- 13)

**Sunday, January 26, 1997**: The autopsy was performed. (R6: 676) Bryan had abrasions to the right cheek and shoulder which were consistent with a swift kick or punch. (R6: 681-82) On his back were several horizontal patterned contusions which were greenish yellow, indicating aging. (R6: 682) They were consistent with having been struck by an asp. (R6: 683) The cause of death was deprivation of food and water. (R6: 685) Bryan had been conscious until the very end, when he would have slipped into a coma. (R6: 684) The ligature binding was instrumental in causing his death. (R6: 689) Detective Donald Hunt recovered the duct tape from Bryan's hands, feet and forehead. (R4: 406) A fingerprint found on this tape was determined to be Margarejo's. (R4: 432) Davila was watching television with his girlfriend when he learned that Bryan had died. (R6: 566) He confessed to his girlfriend that he had been involved. (R6: 566)

**Monday, January 27, 1997**: About 1:00 a.m., Detective Tony Shepard contacted Detective Flair and advised her that Carolyn Pearson, Hinson's ex-girlfriend, had come forward with information. (R4: 357-58) Flair interviewed Pearson, and then Torres and Hinson became suspects in the murder. (R4: 358, 360) Flair obtained an arrest  warrant for Hinson. (R4: 360) Davila obtained a lawyer. (R6: 567, 589)

**Tuesday, January 28, 1997**: Detectives Flair and Mike Willette traveled to South Carolina and interviewed Hinson's girlfriend, Beckwith. (R4: 361-62) Beckwith told them what she had heard Torres say in his room at the Safari Inn in Tampa about the glove. (R4: 446) Hinson was then arrested and interviewed. (R4: 362) Marijuana seeds were found on Hinson's person. (R4: 389) Then Margarejo and Davila were added as suspects. (R4: 363)

**Wednesday, January 29, 1997**: Around 4:00 p.m., Detectives Flair and Willette returned to Tampa with Hinson. (R4: 363) Hinson showed the detectives Margarejo's residence. (R4: 363-64) A search warrant was obtained for the residence and vehicles. (R4: 364) At 9:00 p.m. the warrants were executed. (R4: 365) Williams' gray station wagon was at the residence. (R4: 370-71, 463) Margarejo was arrested a few blocks away when he tried to flee from an Oldsmobile he was driving. (R4: 365, 369) Ami Williams was arrested on charges unrelated to the murder. (R4: 372, 466) Williams gave a post-arrest recorded statement, after which Torres remained a suspect. (R4: 366, 373, 383-84) Margarejo was also interviewed that evening, after which Torres still remained a suspect. (R4: 366-67)

**Thursday, January 30, 1997 or Friday, January 31, 1997**: The Oldsmobile was searched. (R4: 368, 402) The asp was found wedged between the two front seats. (R4: 368, 402)

**February 4, 1997**: Torres turned himself in at the Orient Road Jail. (R4: 373)

**February 12, 1997**: The four defendants were indicted. On this same date, Davila went to the State Attorney's Office to give a recorded statement. (R4: 374-75) (R6: 567) Davila stated that he still had Bryan's VCR, and he gave consent for a search of his room in his parents' home to retrieve it. (R4: 376)(R6: 570) Then Davila was arrested. (R4: 376)(R6: 569)

**February 13, 1997**: The VCR was obtained from Davila's residence. (R4: 377-78)

**June 18, 1997**: Torres wrote a letter to Hinson while they were both incarcerated. (R6: 666)(R7: 726) He accused Hinson of being "the ring leader," and proceeded to outline a version of events to which he wanted Hinson to testify on his behalf. (R7: 726) In the letter Torres admitted that he had procured Margarejo to participate in the crime. (R7: 726-27) However he wanted Hinson to testify that Torres was not present at the time the crime occurred. (R7: 727)

**June 28, 1997**: Torres wrote another letter to Hinson, this time claiming that Torres' only involvement was lending his car to the other three to commit the crime, and selling the marijuana. (R7: 728) The letter promised that if Hinson would testify that Torres had nothing to do with the crime, Torres would "make things happen" for Hinson. (R7: 729) (Exh 5: Answer Brief of Appellee at pp. 2-12).